Filed 6/15/21  In re I.P. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re I.P., a Person Coming Under the Juvenile Court Law. | H048172 (Santa Clara County Super. Ct. No. 18JV43469A) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>I.P.,<br><br>    Defendant and Appellant. | |

Minor I.P. admitted a felony violation of the Vehicle Code for the taking or unauthorized use of a vehicle with the intent to deprive the owner of possession of it. The juvenile court denied deferred entry of judgment (DEJ) and adjudged I.P. a ward of the court.  I.P. appeals the juvenile court's dispositional order, contending the court erred by finding her unsuitable for DEJ.

For reasons that we will explain, we affirm the juvenile court's dispositional order.

## I.  FACTS AND PROCEDURAL BACKGROUND

In December 2018, the Santa Clara County District Attorney (district attorney) filed a juvenile wardship petition under Welfare and Institutions Code section 602,

subdivision (a),[1] alleging that then 15-year-old I.P. had received stolen property (a motor vehicle) (Pen. Code, § 496d, subd. (a)). According to a probation officer's detention hearing report, I.P. had ridden in a vehicle that was stolen by other minors. The police arrested I.P. and then released her to her mother through the "Community Release Program." Later that day, I.P.'s mother informed the probation officer that I.P. had run away from home (although she returned within the next day or so). I.P. told the probation officer that she "struggles with depression," was taking medication, and had been hospitalized at least twice due to suicidal ideation.

At a detention hearing held two days after I.P.'s arrest, the juvenile court placed I.P. on electronic monitoring, finding that she was "[l]ikely to flee" and had "[e]scaped from court commitment." In addition, the court ordered a psychological evaluation and directed the probation officer to temporarily take responsibility for I.P.'s placement and care.

Approximately two weeks later, in January 2019, I.P. "reported to Juvenile Hall" and admitted to having cut off her ankle monitor, run away from home, and refused to return. She was booked into juvenile hall. At a detention hearing held two days later, the juvenile court granted discretion to the Santa Clara County Probation Department (probation department) to release I.P. on a "level of supervision they deem appropriate." Four days later, the district attorney moved to dismiss the wardship petition. The court granted the motion without prejudice and referred the matter back to the probation department "for informal handling."

In January 2020, the district attorney filed another juvenile wardship petition under section 602, subdivision (a), alleging that, on or about December 19, 2019, then 16-year-old I.P. took or drove a vehicle without the owner's consent and with the intent to temporarily deprive the owner of title and possession (Veh. Code, § 10851, subd (a);

_____

[1] Unspecified statutory references are to the Welfare and Institutions Code.

2

count 1).  In addition, the district attorney informed the juvenile court that I.P. was eligible for DEJ.

The probation department subsequently filed a "Suitability Hearing Report" (suitability report) regarding DEJ.  The suitability report described the current offense, recounting that I.P. had been involved in a traffic collision and admitted to a California Highway Patrol officer that she had stolen the car and did not have a driver's license.  When interviewed later by the probation officer who authored the suitability report, I.P. again admitted the theft, describing it as a "crime of opportunity" that was "not pre-planned."  The probation officer asked I.P. "if she had any remorse for her actions" and I.P. replied, " 'No.'  She appeared to minimize her actions and did not accept responsibility for them."

When the probation officer described the DEJ program to I.P., I.P. "was concerned about the length of the program," "appeared very indifferent[,] and would not state whether or not she could complete the program."

I.P.'s mother told the probation officer that I.P. "sometimes leaves the house for days at a time," "does not follow the house rules or curfew hours," "is not respectful toward her mother," has peers who "are negative influences on her," and "partakes in alcohol and drug use while associating with these negative peers."  I.P. admitted to "smoking marijuana frequently" and having negative peers who focus on " 'getting money.' "

The probation officer described some of I.P.'s school-related behavioral problems including her extensive truancy, poor grades, and substance abuse.  By the time of the suitability report, I.P.'s school district had determined that she should be sent to an out-of-state residential treatment, educational, and counseling program.

I.P. told the probation officer that she had no contact with her father because of suspected sexual abuse around the age of three or four.  I.P.'s mother learned about the suspected abuse when I.P. was 15 years old and reported it to the police, but "nothing

3

was done." I.P. and her family had been participating in a counseling program to "recover from the tragedy," but I.P.'s mother "d[id] not see any changes happening with her daughter." I.P. also was taking medication for her depression and anxiety. I.P.'s mother "believe[d] [I.P.] needs services that cannot be provided while being on the DEJ program."

The probation officer reported her conclusion that I.P. was not a suitable candidate for DEJ, opining that I.P. "has needs beyond the scope of DEJ that can only be provided by being a Ward of the Court." The probation officer explained that I.P. "struggles with poor impulse control," "has a very strained relationship with her mother where she leaves home for periods of time without notifying her [mother] of her whereabouts," and frequently smokes marijuana. The probation officer further observed that I.P.'s "current school grades and attendance reflect a lack of effort." Finally, the probation officer noted that I.P.'s mental health needs were being "addressed both individually and within the family unit" and "[h]er sexual abuse as a young child must also be examined and treated as [I.P.] may be dealing with deep seeded trauma."

In March 2020, the juvenile court held a jurisdictional hearing. I.P. moved to reduce the sole charge in the wardship petition to a misdemeanor under Penal Code section 17, subdivision (b). The court denied the motion, referring to the circumstances of I.P.'s offense and the information contained in the suitability report. I.P. then admitted count 1 of the wardship petition. The court accepted I.P.'s admission, sustained the offense as a felony, and found I.P. to be a minor described by section 602.

Following I.P.'s admission, the juvenile court rejected another request by I.P. to reduce the offense to a misdemeanor. The court also heard argument regarding whether I.P. was suitable for DEJ. I.P.'s defense counsel argued that I.P. had demonstrated maturity by acknowledging her current offense and her prospects for change, as well as by "her cooperation and honesty" with police officers, the probation officer, defense counsel, and the court. Defense counsel also noted that I.P. had been attending school,

4

had "expressed some more motivation" regarding her performance in school, and had agreed to "take school transportation," which counsel believed would improve I.P.'s attendance. Regarding counseling for I.P., defense counsel reported that I.P. was receiving treatment voluntarily and enjoyed that treatment. The district attorney opposed DEJ, asserting that I.P.'s "needs exceed[] what DEJ can provide." The district attorney observed that I.P. had been on informal supervision before she committed her current offense and suggested I.P. would not succeed in DEJ "because she needs further treatment."

The juvenile court said it "believe[d] that DEJ cannot really provide the services necessary . . . to help [I.P.] with rehabilitation" and "it's important that we take all of the things into consideration." The court explained that "there are concerns regarding education" and "some school behavior," while acknowledging that I.P. had been taking "some [positive] steps." The court further observed that "[t]here are definitely some concerns related to [the] family relationship" and I.P. leaving home without providing her whereabouts. Regarding treatment, the court said that I.P. was currently "in treatment, which is good, but that needs to continue. DEJ is just really not -- it's a program where we don't have much to work on; right? And kind of can come through."

Further, the juvenile court explained that I.P. would have the opportunity to move the court in the future under Penal Code section 17 to reduce the offense, after she served time on probation. The court observed that I.P. could show improvement in her behavior and "that we don't have to worry about your criminality, that you are rehabilitated and working with appropriate services and I'll reconsider that. . . . I think we just need to see how things go, but my desire is that you do a really good job on probation and get off probation." The court then concluded its ruling saying, "But for now, today, I am going to make a finding that DEJ is not suitable in this case."

At a dispositional hearing held on May 21, 2020, the juvenile court adjudged I.P. a ward of the court and ordered various probation conditions. The conditions included that

"[I.P] and her parents participate in a counseling or education program as determined by the Probation Officer," "enroll in and complete a drug/alcohol education program as determined by the Probation Officer," and "participate in Wraparound services" as arranged by I.P.'s probation officer.

I.P. timely appealed.

## II.  DISCUSSION

I.P. contends the juvenile court erred by finding her unsuitable for the DEJ program.  I.P. maintains the court's denial of DEJ "was irrational and based on impermissible factors," in that the court "found I.P. unsuitable, *not* because she was 'unamenable to education, treatment or rehabilitation[,'] but bizarrely, because she *needed* those things."  I.P. further asserts no valid reasons to deny DEJ were present in this case.  Given this alleged error, I.P. asks us to vacate the disposition order and remand the matter to the juvenile court with directions to reconsider DEJ.

The Attorney General counters that the juvenile court acted within its discretion to deny DEJ because "all indications were that without the structure afforded by formal probation following entry of judgment, it was highly likely that [I.P.] would continue her drug use, accrue more absences from school, defy her mother, and abscond with no one knowing her whereabouts, thereby threatening to derail any chance she had for rehabilitation."

A.  *Applicable Legal Principles and Standard of Review*

"Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances."  (§ 202, subd. (b).)

"The DEJ provisions of section 790 et seq. 'provide that in lieu of jurisdictional and dispositional hearings, a minor may admit the allegations contained in a section 602

6

petition and waive time for the pronouncement of judgment. Entry of judgment is deferred. After the successful completion of a term of probation, on the motion of the prosecution and with a positive recommendation from the probation department, the court is required to dismiss the charges. The arrest upon which judgment was deferred is deemed never to have occurred, and any records of the juvenile court proceeding are sealed.' " (*In re C.W.* (2012) 208 Cal.App.4th 654, 659 (*C.W.*).)

"The determination of whether to grant DEJ requires consideration of 'two distinct essential elements of the [DEJ] program,' viz., 'eligibility' and 'suitability.' [Citation.] Under section 790, the prosecuting attorney is required to determine whether the minor is eligible for DEJ." (*C.W.*, *supra*, 208 Cal.App.4th at p. 659; see also Cal. Rules of Court, rule 5.800(a)–(b).) "Once the threshold determination of eligibility is made, the juvenile trial court has the ultimate discretion to rule on the minor's suitability for DEJ. [Citation.] Suitability for DEJ is within the court's discretion after consideration of the factors specified by statute and rule of court, and based upon the standard of whether the minor will derive benefit from ' " ' "education, treatment, and rehabilitation" ' " ' rather than a more restrictive commitment."[2] (*C.W.*, at p. 660; see also *Martha C. v. Superior*

---

[2] Section 790, subdivision (b), provides in relevant part: "Upon a finding that the minor is [] suitable for deferred entry of judgment and would benefit from education, treatment, and rehabilitation efforts, the court may grant deferred entry of judgment." (§ 790, subd. (b).) (See also Cal. Rules of Court, rule 5.800(b)(2) ["If the court determines that the child is eligible and suitable for a deferred entry of judgment, and would derive benefit from education, treatment, and rehabilitation efforts, the court may grant deferred entry of judgment."].)

Section 791, subdivision (b), provides in relevant part: "When directed by the court, the probation department shall make an investigation and take into consideration the defendant's age, maturity, educational background, family relationships, demonstrable motivation, treatment history, if any, and other mitigating and aggravating factors in determining whether the minor is a person who would be benefited by education, treatment, or rehabilitation. The probation department shall also determine which programs would accept the minor. The probation department shall report its findings and recommendations to the court. The court shall make the final determination regarding education, treatment, and rehabilitation of the minor." (§ 791, subd. (b).)

7

*Court of San Diego County* (2003) 108 Cal.App.4th 556, 561 (*Martha C.*).) "[T]he statutory language empowers but does not compel the juvenile court to grant deferred entry of judgment once eligibility under section 790, subdivision (a) is established." (*In re Sergio R.* (2003) 106 Cal.App.4th 597, 605 (*Sergio R.*).)

On appeal, the juvenile court's orders are presumed to be correct, and the appellant bears the burden to show error. (See *In re Julian R.* (2009) 47 Cal.4th 487, 498–499.) "An appellate court will not lightly substitute its decision for that rendered by the juvenile court. We must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them." (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395.)

A juvenile court's decision to deny DEJ is reviewed for abuse of discretion. (*In re Damian M.* (2010) 185 Cal.App.4th 1, 5 (*Damian M.*).) "[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered." (*People v. Giminez* (1975) 14 Cal.3d 68, 72.) Further, "an abuse of discretion arises if the trial court based its decision on impermissible factors [citation] or on an incorrect legal standard." (*People v. Knoller* (2007) 41 Cal.4th 139, 156.)

B. *Analysis of DEJ Denial*

It is undisputed that I.P. was eligible for DEJ; the controversy here centers on the juvenile court's determination that I.P. was not suitable. For reasons we will explain, we are not persuaded by I.P. that the juvenile court improperly denied DEJ "based on nothing more than her need for treatment and rehabilitation."

At the jurisdictional hearing, the juvenile court stated that it had reviewed the suitability report. Further, the court's ruling indicates an awareness of its discretion to independently decide whether I.P. was suitable for DEJ. The court specifically noted its concerns about I.P.'s poor performance and behavioral problems at school, as well as I.P.'s failure to follow rules at home. The court's concerns were amply supported by the probation officer's suitability report and other information in the record. The suitability

8

report also provided information regarding I.P.'s limited maturity and her uncertainty and doubtful motivation regarding participation in the DEJ program. We can reasonably infer from the record that all the information within the suitability report factored into the juvenile court's analysis of I.P.'s suitability for DEJ. Moreover, the concerns articulated by the court, as well as the other available information, could properly be relied on to determine that DEJ was not appropriate for I.P. (See *In re Usef S.* (2008) 160 Cal.App.4th 276, 284.)

Regarding treatment and counseling, the suitability report discussed I.P.'s treatment history and needs. The juvenile court also acknowledged that I.P. had ongoing treatment needs and opined that they exceeded what DEJ could accommodate. Relatedly, the court stated that the DEJ program could not provide the "services necessary . . . to help [I.P.] with rehabilitation." I.P. did not challenge the court's characterization of the services available through the DEJ program as limited. We thus presume the court was aware of the scope of services possible in connection with DEJ. Regardless of the exact differences between the services afforded on DEJ and probation after the dispositional order, we do not agree with I.P. that the court improperly used her need for treatment and rehabilitation when making the suitability determination. Rather, the record demonstrates the court made a judgment based on individualized factors which support its conclusion that postdispositional probation was more appropriate for I.P. than DEJ.

A juvenile court is not required to grant DEJ to every eligible minor who would benefit from education, treatment, and rehabilitation efforts. Instead, the court may decide whether a more restrictive commitment is more appropriate for the minor than DEJ and any concomitant benefit. (See *Sergio R.*, *supra*, 106 Cal.App.4th at p. 605.) That is what occurred in this case. When ruling, the juvenile court discussed the prospect of I.P.'s rehabilitation and acceptance of appropriate services while on formal probation (after being adjudged a ward) to show that she had "moved beyond" her poor behavior and criminality. The court's statements regarding rehabilitation and treatment services

9

indicate its judgment that wardship and formal probation would provide a greater benefit as to I.P.'s education, treatment, and rehabilitation. That judgment is not unreasonable under the totality of the circumstances, including I.P.'s immaturity, recidivism, and reluctance to participate in the DEJ program. We conclude the juvenile court's judgment falls within the standard for the suitability determination and does not exceed the bounds of reason. (See *Damian M.*, *supra*, 185 Cal.App.4th at pp. 5–6; *Sergio R.*, at p. 608.)

I.P. relies principally on *Martha C.* to support her argument that the juvenile court erred. But *Martha C.* is readily distinguishable from the present case. In *Martha C.*, the probation department concluded the minor would benefit from education, treatment, and rehabilitation, and the "trial court's remarks suggest it agreed." (*Martha C.*, *supra*, 108 Cal.App.4th at p. 562.) Nevertheless, the trial court "denied DEJ because it wished to send a [deterrence] message to other potential juvenile drug smugglers." (*Ibid.*) The Court of Appeal concluded that "[t]his was not an appropriate basis for denying DEJ since it had nothing to do with [the minor]'s potential for rehabilitation." (*Ibid.*)

By contrast to the circumstances in *Martha C.*, the juvenile court here mentioned the importance of "tak[ing] all of the things into consideration" and noted facts that were directly relevant to determining the benefit that I.P., herself, would derive from education, treatment, and rehabilitation efforts under DEJ or wardship with formal probation. On this record, we conclude the juvenile court reasonably determined that I.P. was not "a person who would be benefited by education, treatment, or rehabilitation" (§ 791, subd. (b)) but that she "required more formal, restrictive measures" (*Sergio R.*, *supra*, 106 Cal.App.4th at p. 608) such that she was not suitable for DEJ. (*Id.* at pp. 607– 608; *Damian M.*, *supra*, 185 Cal.App.4th at pp. 5–6.) Accordingly, there was no abuse of discretion.

### III. DISPOSITION

The juvenile court's disposition order of May 21, 2020 is affirmed.

10

_____
                   Danner, J.

WE CONCUR:

_____
Greenwood, P.J.

_____
Grover, J.

**H048172**
***People v. I.P.***